NUMBER 13-06-668-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


W.R. GRACE & CO.-CONN., Appellant,


v.
 


THOMAS C. HENSON, Appellee.

 


On appeal from the 148th District Court 


of Nueces County, Texas.


 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Rodriguez and Garza

Memorandum Opinion by Justice Rodriguez


 This is an accelerated appeal of the trial court's denial of a request to issue a
temporary injunction. See Tex. R. App. P. 28.1. By two issues, appellant, W.R. Grace &
Co.-Conn. (WRG), complains that the trial court erred in failing to issue a temporary
injunction to preclude appellee, Thomas C. Henson, from soliciting WRG's customers and
from using or disclosing WRG's confidential information. We affirm.

I. Background

 WRG manufactures and sells chemical additives (admixtures) used by cement and
concrete manufacturers. Henson was hired by WRG in August 1979 and signed an
employment agreement that contained a covenant not to compete and a non-disclosure
provision. On October 16, 2006, Henson gave notice to WRG that he was resigning to
accept employment with one of WRG's competitors, SIKA Corporation. On November 6,
2006, WRG filed a petition asserting claims for breach of contract, breach of fiduciary duty,
and misappropriation against Henson. WRG also filed an application for a temporary
restraining order and an application for a temporary injunction. WRG obtained an ex parte
temporary restraining order the day suit was filed.

 On November 28, 2006, the trial court held an evidentiary hearing on WRG's
application for a temporary injunction. Henson and Scott Hausman, WRG's territory sales
manager for western Iowa and Nebraska, and who became WRG's territory manager for
Texas after Henson resigned, testified at the hearing. Henson testified that, after leaving
WRG's employ, he did not use, copy, or share any of WRG's confidential information. The
day after he resigned, he returned all WRG documents and materials in his possession to
WRG. Hausman testified that after going through all the materials Henson returned upon
leaving WRG, he was not aware of any WRG documents or information that Henson had
not returned or any WRG documents or information that Henson had shared with anyone
else. Henson testified that, in his current job, he had no use for any information he may
have received while working for WRG. SIKA, his current employer, required him to sign
an agreement that confirms that, in his new job, he will not use, possess, or even refer to
confidential or proprietary information belonging to anyone else.

 Henson testified that, as an employee of SIKA and before the temporary restraining
order was entered, he contacted a number of WRG customers that he serviced when he
was employed by WRG. Henson also testified that he had no contact with those
companies after the temporary restraining order was issued; however, if not enjoined he
intended to solicit business from all of the companies. Regarding disclosure of information
received or obtained while working for WRG, Henson testified as follows:

 Counsel: [F]rom the time that you left [WRG], to the time you started
working with SIKA, to the present, have you at any time used
or disclosed or revealed to anyone either at SIKA or any of the
customers that you've contacted, any of the information,
confidential, proprietary or otherwise, that you may have
received or obtained while working for [WRG]?


 Henson: I have not.


 Counsel: And do you have any intention of doing so?


 Henson: No, I do not.


 Counsel: Do you need - in the way that you go about doing your
business and contacting customers, do you need to disclose
or reveal any information that you may have received while
working for [WRG]?


 Henson: I - I have absolutely no - no use for any of it.

 Hausman specifically testified that he considered pricing information highly
proprietary and that sales representatives such as Henson were required to periodically log
onto WRG's "Seibol System," a computer system that produces a sales by customer by
item report. Henson, however, testified that he no longer had access to "Seibol" and had
retained no WRG pricing information (either on paper or in his head). Henson also testified
that he "doesn't need" and "doesn't have" any of WRG's pricing information.

 At the close of the hearing, the trial court issued an order denying WRG's
application for temporary injunction. This interlocutory appeal ensued. See Tex. Civ.
Prac. & Rem. Code Ann. 51.014(a)(4) (Vernon Supp. 2006).

II. Standard of Review and Applicable Law

 The decision to deny a temporary injunction falls within the sound discretion of the
trial court and will not be reversed absent a clear abuse of that discretion. Butnaru v. Ford
Motor Co., 84 S.W.3d 198, 204 (Tex. 2002); Haq v. America's Favorite Chicken Co., 921
S.W.2d 728, 730 (Tex. App.-Corpus Christi 1996, writ dism'd w.o.j). "The reviewing court
must not substitute its judgment for the trial court's judgment unless the trial court's action
was so arbitrary that it exceeded the bounds of reasonable discretion." Butnaru, 84
S.W.3d at 204. "An abuse of discretion does not exist where the trial court bases its
decisions on conflicting evidence." Haq, 921 S.W.2d at 731 (citing Davis v. Huey, 571
S.W.2d 859, 862 (Tex. 1978)).

 A temporary injunction is an extraordinary remedy that will not issue without both
pleading and proof of: (1) a cause of action; (2) a probable right to recover on that cause
of action; and (3) a probable, imminent, and irreparable injury in the interim. Butnaru, 84
S.W.3d at 204. "An injury is irreparable if the injured party cannot be adequately
compensated in damages or if the damages cannot be measured by any certain pecuniary
standard." Id.; Haq, 921 S.W.2d at 730.

 A covenant not to compete "will not be enforced by an injunction where the party
seeking the injunction has failed to show that without injunctive relief he will suffer
irreparable injury for which he has no adequate legal remedy." Reach Group, L.L.C. v.
Angelina Group, 173 S.W.3d 834, 837-38 (Tex. App.-Houston [14th Dist.] 2005, no pet.). 
"Generally, the purpose of injunctive relief is to halt wrongful acts that are threatened or in
the course of accomplishment, rather than to grant relief against past actionable wrongs
or to prevent commission of wrongs not imminently threatened." Tex. Health Care Info.
Council v. Seton Health Plan, Inc., 94 S.W.3d 841, 853 (Tex. App.-Austin 2002, pet.
denied). Although an injunction is a preventive device, injunctive relief is improper when
the party seeking the injunction has mere fear or apprehension of the possibility of injury. 
Harbor Perfusion, Inc., v. Floyd, 45 S.W.3d 713, 716 (Tex. App.-Corpus Christi 2001, no
pet.).

 In this case, the trial court made no findings of fact or conclusions of law pertaining
to the three elements of appellant's application for temporary injunction. (1)
 Therefore, we
will imply all necessary findings in support of the trial court's judgment, Casino Magic Corp.
v. King, 43 S.W.3d 14, 19 (Tex. App.-Dallas 2001, pet. denied) (citing Holt Atherton Indus.,
Inc. v. Heine, 835 S.W.2d 80, 83 (Tex. 1992)), and review the record to determine if the
order of the court must be upheld under any legal theory supported in the record. See
Davis, 571 S.W.2d at 862.

 Finally, at a temporary injunction hearing, "the ultimate merits of the case are not
before the trial court." Reach Group, 173 S.W.3d at 837. Accordingly, in reviewing the
denial of a temporary injunction based on a covenant not to compete, this Court "do[es]
not reach the ultimate issue of whether the provisions in the agreements are enforceable
under Texas law." Id. at 837 n.3 (citing Tom James of Dallas, Inc. v. Cobb, 109 S.W.3d
877, 884 (Tex. App.-Dallas 2003, no pet.)).

III. Analysis

 On appeal, WRG contends that the trial court erred in failing to issue a temporary
injunction to preclude Henson from soliciting WRG's customers and from using or
disclosing WRG's confidential information because (1) the non-solicitation provision in the
employment agreement was enforceable; and (2) WRG will suffer irreparable injury absent
an injunction.

A. Irreparable Injury and Lack of Adequate Remedy at Law (2)

 By its second issue, WRG asserts that, by inference, it appears that the trial court
believed that there was sufficient evidence that WRG would suffer irreparable harm should
a temporary injunction not issue. However, the trial court made no findings of fact or
conclusions of law pertaining to this temporary injunction element. Therefore, we will imply
all necessary findings in support of the trial court's judgment, and we will review the record
to determine if the trial court's order can be upheld under any legal theory, including the
failure of WRG to prove irreparable harm and the lack of an adequate remedy at law. See
Davis, 571 S.W.2d at 862; see Casino Magic, 43 S.W.3d at 191.

 WRG also generally contends that it will suffer irreparable injury absent an
injunction. (3) However, WRG has presented no evidence of wrongful acts that are imminently
threatened or in the course of accomplishment. WRG does not claim that it has lost any
business. WRG did not prove that Henson used any confidential information to solicit
business for his new employer. Instead, the evidence is to the contrary.

 WRG's representative, Hausman, testified that he knew of no misuse of information
by Henson. Hausman also did not identify any business or specific customer that WRG has
lost or is in danger of losing. Although Henson has contacted customers of WRG, Henson
testified that, in his current job, he had no use for any information he may have received
while working for WRG, and he has not, at any time, used or disclosed or revealed any of
the WRG information to any of the customers he contacted, and has no intent to do so in
the future. Henson testified that he has not made a single sale to any former WRG
customer and is aware of no loss to WRG resulting from his contacts on behalf of his new
employer. Henson returned to WRG all of its information and materials. He also testified
that he has not shared any WRG information with anyone at SIKA.

 In addition, WRG provided no evidence regarding harm or injuries that may not be
remedied through an award of monetary damages, or that are not readily susceptible of
pecuniary measure. Butnaru, 84 S.W.3d at 204; Haq, 921 S.W.2d at 730. Thus, WRG
failed to show that it had no adequate legal remedy for any harm allegedly suffered. See
Haq, 921 S.W.2d at 731; see also Reach Group, 173 S.W.3d at 838 ("[A] party can rarely
establish an irreparable injury and inadequate legal remedy when damages for breach of
contract are available."). Because WRG did not carry this burden, even if there were harm
to WRG, the trial court did not err in denying its application for a temporary injunction on this
basis. See Reach Group, 173 S.W.3d at 838 (citing Cardinal Health Staffing Network, Inc.
v. Bowen, 106 S.W.3d 230, 235, (Tex. App.-Houston [1st Dist.] 2003, no pet.).

 WRG did not prove any irreparable injury, thus, the trial court did not abuse its
discretion in denying WRG injunctive relief on this basis. See Haq, 921 S.W.2d at 731
(affirming the denial of temporary injunction in the absence of any showing of irreparable
injury); Reach Group, 173 S.W.3d at 837-38 (same). We overrule WRG's second issue.

B. Enforceability of Non-Solicitation Provision

 WRG contends by its first issue that the trial court's failure to enjoin Henson from
soliciting certain WRG customers was predicated upon the determination that Henson's
non-solicitation agreement was unenforceable as a matter of law. We need not address
this issue because the order of the trial court must be upheld on the legal theory set out
above. See Davis, 571 S.W.2d at 862; see also Tex. R. App. P. 47.1 (charging the courts
of appeals to hand down a written opinion that is as brief as practicable but that addresses
every issue raised and necessary to final disposition of the appeal).

 Moreover, we decline to address the ultimate issue of the enforceability of the non-compete agreement at this time because the functions of a temporary injunction hearing
and a trial on the merits are different. Tom James, 109 S.W.3d at 884; see Reach Group,
173 S.W.3d at 837 n.3 (setting out that upon review of the denial of a temporary injunction
based on a covenant not to compete, this Court does not reach the ultimate issue of
whether the provisions in the agreements are enforceable under Texas law). At a
temporary injunction hearing, the trial court determines, among other things, whether WRG,
in this case, had a probable right of success at final trial, and our review is limited to
whether the trial court abused its discretion in refusing to grant temporary relief. Tom
James, 109 S.W.3d at 884-85. The ultimate merits of the controversy, both legal and
factual issues, were not before the trial court in this proceeding. See id. Therefore,
although argued to the trial court and now on appeal, we do not, and will not, reach the
ultimate issue of the enforceability of the non-compete agreement at issue in this case. 
"That issue awaits a final judgment on the merits, such as a final judgment entered after a
jury or bench trial or a hearing on a motion for summary judgment." See id. at 885.

IV. Conclusion

 Accordingly, we affirm the judgment of the trial court. 

 NELDA V. RODRIGUEZ

 Justice


Memorandum Opinion delivered and 

filed this 23rd day of August, 2007.
1. Although the trial court's order includes a statement that could be interpreted as a finding
of fact, such "finding" does not meet the requirements of Texas Rule of Civil Procedure 299a. 
Tex. R. Civ. P. 299a (requiring findings of fact to be separately filed and not simply recited in the
judgment); Tom James of Dallas, Inc. v. Cobb, 109 S.W.3d 877, 884 (Tex. App.-Dallas 2003, no
pet.); Casino Magic Corp. v. King, 43 S.W.3d 14, 19 n.6 (Tex. App.-Dallas 2001, pet. denied). 
Accordingly, we use the standard of review applicable to cases where no findings have been
requested or filed. Casino Magic Corp., 43 S.W.3d at 20.

2. For the purposes of this opinion, we will refer to this argument as WRG's second issue.
3. Although irreparable harm may be presumed from the misuse of confidential
information, there is no proof of that here, so the presumption is inapplicable under the facts of
this case. See, e.g., Cardinal Health Staffing Network, Inc. v. Bowen, 106 S.W.3d 230, 234 (Tex.
App.-Houston [1st Dist.] 2003, no pet) (no presumption where evidence raised reasonable
inference that disclosure and use were not probable); EMSL Analytical, Inc. v. Younker, 154
S.W.3d 693, 698 (Tex. App.-Houston [14th Dist.] 2004, no pet.).